UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES ROSCOE JONES,

    Plaintiff,

v.                                                  Case No. 2:08-cv-268
                                                HON. ROBERT HOLMES BELL

PEGGY ANN CARBERRY, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff James Roscoe Jones, an inmate confined at the Alger Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Peggy Ann Carberry, L. Bone, Aikens, J. Armstrong, Sego, Hursh, L. Rapelje, Prunick, D. Bergh, D. McBurney, D. Lutz, R. Fielding, T. Salo, D. Gerth, and S. Andrews.

Plaintiff's complaint alleges that defendant Fielding placed contaminated gloves on the inside of plaintiff's Kosher meal trays. When plaintiff stated that he could not accept the trays defendant Fielding allegedly stated, "Your [sic] lucky to be getting anything, I haven't forgotten that assault you had caught on me years ago. . . . Either take your Kosher trays or be placed on Kosher food loaf." As a result, plaintiff took the trays. Plaintiff complains that on March 29, 2007, defendant Fielding opened and closed the lower cell slot on plaintiff's cell causing it to jam. When defendant Fielding delivered food trays on that day he opened the slot too fast and the trays landed on the floor. Plaintiff alleges that defendant stated, "Like I told you this morning, your complaining

and writing grievances won't solve anything. It's my word against yours." Plaintiff complained about these comments to defendant Carberry who initially ignored plaintiff, but then stated, "Jones you complain about everything if your [sic] mad about your Jewish Kosher trays, then get a release from administrative segregation, from my knowledge of dealing with you, you're not a real Jew anyways." Plaintiff claims that he was left with no other option but to write to Deputy Warden Rapelja and Warden Bergh. Plaintiff claims that when defendant Hursh interviewed plaintiff regarding grievances plaintiff had written on defendant Fielding, defendant Hursh told plaintiff that defendant Fielding stated that plaintiff's complaints were true and that he acted to teach plaintiff a lesson. Defendant Hursh then allegedly stated, "Let that be a lesson learn [sic]." On March 30, 2007, plaintiff received correspondence from Deputy Warden Rapelje indicating that the RUM would resolve plaintiff's concerns. Plaintiff claims that Deputy Warden Rapelje never took steps to correct the harassing conduct. Plaintiff claims that he continued to face retaliatory actions from defendant Fielding.

Plaintiff alleges that on March 3, 2007, defendant Fielding called plaintiff a "rat" and stated, "He's writing grievances and kites on inmates and RUOs." These comments were overheard by other inmates. Plaintiff alleges that inmates were yelling death threats to plaintiff after overhearing what defendant Fielding had said. Defendant Fielding then whispered to plaintiff, "Just like slavery - it's all about divide and concurd [sic]." Plaintiff states that on April 6, 2007, defendant Fielding asked plaintiff to sign off on the grievances. Defendant Fielding stated that if plaintiff signed off on the grievances plaintiff would receive his morning meal tray. Plaintiff refused to sign off and defendant Fielding refused to provide plaintiff a meal tray. Later that day when defendant Fielding brought a food tray to plaintiff, he asked plaintiff if he was going to stop writing grievances.

When plaintiff said no, defendant Fielding walked away saying, "I guess you won't be eating your Kosher food loaf."

On April 7, 2007, defendant Fielding allegedly told plaintiff that he would not be receiving breakfast or lunch because plaintiff's food was going to an inmate that was planning to throw feces on plaintiff. Plaintiff did not receive his Kosher food loaf. On April 8, 2007, defendant Fielding told plaintiff to go lay down because he would not be eating his morning meal. Defendant Fielding did not provide plaintiff with his Kosher food loaf.

On March 3, 2007, defendant Sego removed four FEMA books from plaintiff's cell during a shake-down. Plaintiff argues that these books were not a security threat and should not have been confiscated. Plaintiff believes that prison officials do not want inmates to educate themselves while confined in prison. Plaintiff alleges that defendant Carberry came to plaintiff's cell to conduct an administrative hearing, she told him that he would not get the books back. Defendant Gerth told plaintiff when interviewing him on the grievance that plaintiff would not get the books back because they were included on the restricted publication list. Plaintiff was told that the MDOC was not there to rehabilitate prisoners.

On March 25, 2008, plaintiff was being escorted to the shower when inmate Berry asked, "Bitch what are you going to do now?" Inmate Berry was standing at the shower stall with a container in his hand. Plaintiff expressed fear that inmate Berry would throw feces on him. Defendant Prunick responded that he did not care and that plaintiff should get into the shower stall. Inmate Berry threw feces on plaintiff while plaintiff was in the shower stall. Plaintiff complains that the officers did nothing to help plaintiff, but simply pulled on plaintiff's restraint straps with force causing plaintiff to strike the shower cage. When plaintiff complained, defendant Bone stated, "Getting shit on you is not a problem, but getting shit on me is the problem." Plaintiff states that

defendant Bone praised inmate Berry for his conduct. Plaintiff states that he was not given clean clothing or towels, nor medical attention. Plaintiff claimed that he was in severe pain, but defendants Bone, Prunick and McBurney ignored his requests for medical attention. Plaintiff claims that defendant Prunick had told inmate Berry that plaintiff was going to showers so Berry should get ready.

Plaintiff claims that on January 30, 2007, he received a notice of a package mail rejection from mail room employee S. Andrews. The mail was from ASCAP Organization in Los Angeles, California. Plaintiff claims that defendant Carberry acted unprofessional in denying plaintiff his mail. The mail involved information about buying and selling music and running a business. Plaintiff claimed that he was not trying to run a business, but to simply learn about this material. Plaintiff claims that defendant Salo indicated that material promoting the running of a business is not permissible in the prison. Defendant Salo told plaintiff that defendant Carberry would have given the mail back to anyone else, but not to plaintiff.

Plaintiff alleges that he was placed on a mattress restriction by defendant Bone for making over 100 feet of line from his mattress. Plaintiff claims that his mattress was destroyed before he was assigned to the cell. Plaintiff complains that defendant Bone refused to provide him another blanket, telling plaintiff to get it from another officer. Plaintiff claims that he was placed on a mattress restriction for over 39 days. Plaintiff claims that defendants violated the First, Eighth, Ninth and Fourteenth Amendments.

Defendants have moved to dismiss and alternatively for summary judgment. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355. U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 988 F.2d at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The court will address defendants' arguments in the order that they were briefed. The first argument is presented as: "The Claims Against Defendants Armstrong and Lesatz Are Based Solely on Conclusory Assertions of Constitutional Deprivation." Defendants Armstrong and Lesatz correctly point out that plaintiff has presented no allegations against them in his complaint. Accordingly, in the opinion of the undersigned, defendants Armstrong and Lesatz should be dismissed from this case.

Defendants state in their second argument that: "The Averments Defendants Arkens, Salo, McBurnery, Hursh, Gerth, Carberry, Bergh, Salo, Bone, Prunick and Fielding Do Not Support The Claims Asserted Against Them." The court agrees with defendants' argument that to the extent that plaintiff is alleging that defendants' acted unprofessionally by stating means things and laughing at him, these allegations do not rise to the level of an Eighth Amendment claim. However, plaintiff has alleged that he was denied meals, was not protected after he warned officers that another inmate was planning to throw feces on him, and that officers set him up by allowing the other inmate to throw feces on him. Plaintiff also alleges that he was improperly placed on a mattress restriction and

denied an extra blanket. Plaintiff also asserts that he was labeled a rat by one of the defendants. These allegations can certainly support an Eighth Amendment claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Defendants should address the substance of plaintiff's Eighth Amendment claims.

Defendants then argue that plaintiff asserts that "these and similar alleged incidents constitute violations of his rights under the First, Eighth, Ninth and Fourteenth Amendments." Apparently, defendants are arguing that harassing and inappropriate language cannot violate the First, Eighth, Ninth or Fourteenth Amendments. In the opinion of the undersigned, defendants are correct. Unpleasant and even unprofessional comments do not state a constitutional claim.

Similarly, in the opinion of the undersigned, defendants are correct that to the extent that defendants handled plaintiff's grievance interviews in a manner that plaintiff believes is improper fails to state any constitutional claims. Plaintiff has not shown that his due process rights

were violated. Defendant Sego asserts that the confiscation of contraband property and defendant Andrew's issuance of a notice of mail/package rejection cannot form the basis of constitutional claims. Defendants argue that prison officials have determined that these items pose a threat to prison security and interfere with prisoner rehabilitation. That may be true, but simply asserting the conclusion is not sufficient to support a motion for summary judgment. Defendants need to explain why the items are considered a security threat and show that plaintiff's rights were not violated through the confiscation and process upholding the confiscation.

Defendant Fielding asserts that plaintiff was denied meals only when he refused to follow orders. Plaintiff, according to defendant Fielding, had threatened to spit on defendant Fielding and threatened to set defendant Fielding up. Plaintiff has submitted affidavits from other prisoners who all state that defendant refused to take plaintiff's meal trays and purposefully refused to provide plaintiff meals on certain dates. In the opinion of the undersigned a question of fact exists whether defendant Fielding violated plaintiff's rights.

Although not specifically argued, plaintiff's Ninth Amendment claims should be dismissed. Generally, the Ninth Amendment is not considered as a specific guarantee of individual liberty. *But see, Griswold v. Connecticut*, 381 U.S. 479, 486-99 (1965), concurring opinion, expressing the view that the Ninth Amendment recognizes additional individual rights. The Ninth Amendment states:

> The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

Plaintiff has failed to show how the Ninth Amendment was violated by the defendant. Plaintiff, in my opinion, has failed to implicate any interest under the Ninth Amendment and that claim is frivolous.

Defendants assert generally that they are entitled to dismissal based upon qualified immunity because of the arguments asserted in their brief. Defendants argue that they are entitled to qualified immunity from liability. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* In the opinion of the undersigned defendants have not met their burden of showing an entitlement to the defense of qualified immunity.[1]

---

[1] It is noted that defendants have attached affidavits and exhibits to their motion, but made little attempt to show the relevance of the affidavits or exhibits to the arguments presented in their brief.

In summary, it is recommended that defendants' motion for summary judgment (Docket #27) be granted, in part, dismissing defendants Armstrong and Lesatz, dismissing plaintiff's Eighth Amendment claim for "harassing and unprofessional language," and dismissing plaintiff's Ninth Amendment claim. Plaintiff's First Amendment claims, remaining Eighth Amendment claims, and Fourteenth Amendment claims should proceed at this time.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2010