UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES ROSCOE JONES,

    Plaintiff,

v.                                          CASE NO. 2:08-cv-268

PEGGY ANN CARBERRY, et al.,        HON. ROBERT HOLMES BELL

    Defendants.
_____/

## MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on an action brought by Plaintiff James Roscoe Jones pursuant to 42 U.S.C. § 1983 against numerous prison employees, Defendants Carberry, Bone, Aikens, Armstrong, Sego, Hursh, Rapelje, Prunick, Bergh, McBurney, Lutaz, Fielding, Salo, Gerth, and Andrews. Defendants filed a joint motion to dismiss, motion for summary judgment, and motion for qualified immunity on June 15, 2009 ("joint motion"). (Dkt. No. 27.) On February 10, 2010, the Magistrate Judge filed a report and recommendation (R&R) recommending that Defendants' joint motion be granted in part and denied in part. Specifically, the R&R recommends that Plaintiff's claims against Defendants Armstrong and Lesatz, Eighth Amendment claim for harassing and unprofessional language, and Ninth Amendment claim be dismissed. The R&R recommends that Plaintiff's First Amendment

claims, remaining Eighth Amendment claims, and Fourteenth Amendment claims be permitted to proceed. Defendants filed objections to the R&R on February 24, 2010. (Dkt. No. 37.) After the Court granted Plaintiff an extension of time to respond, Plaintiff filed objections to the R&R on March 15, 2010. (Dkt. No. 45.)

This Court must review de novo those portions of the R&R to which specific objection has been made, and may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, only those objections that are specific are entitled to de novo review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding that the district court need not provide de novo review where the objections are frivolous, conclusive, or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider").

The objections offered by the parties require the Court to conduct a de novo review of the arguments advanced in Defendants' joint motion, some of which seek dismissal of claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, some of which seek dismissal of claims under Rule 56 of the Federal Rules of Civil Procedure for an absence of a genuine issue of material fact, and some of which seek dismissal of claims under the doctrine of qualified immunity. Thus, when appropriate the Court must apply any or all of the Rule 12(b)(6), Rule 56, and qualified immunity legal standards.

Under Rule 12(b)(6), a complaint fails to state a claim upon which relief can be granted if no set of facts alleged in the complaint, if proven, would entitle the plaintiff to relief. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). Unlike a motion brought under Rule 12(b)(6), in considering a motion brought under Rule 56 the court should look beyond the face of the complaint to the evidence presented.[1] A party is entitled to summary judgment if, in light of the evidence presented, "there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Finally, in a § 1983 action, a defendant is entitled to qualified immunity if either the facts that Plaintiff has alleged in his complaint fail to make out a violation of a constitutional right, or they do make out a violation of a constitutional right but that right has not been "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009).

## I. Plaintiff's Objections

Plaintiff first objects to the Magistrate Judge's determination that the claims against Defendants Armstrong and Lesatz should be dismissed. Plaintiff does not mention Defendants Armstrong and Lesatz in his complaint, but in his objections Plaintiff asserts that

---

[1] It is important to note that, for purposes of determining whether Plaintiff has introduced evidence sufficient to withstand Defendants' Rule 56 motion for summary judgment, Plaintiff has verified his complaint. (Dkt. No. 34, Ex. ("Plaintiff has declare under the penalty of perjury, that the complaints made in the Plaintiff 1983 is true and correct" [sic]).) A verified complaint carries the same evidentiary weight as an affidavit, and affidavits may be considered in determining whether sufficient evidence exists to create a genuine issue of material fact. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *see* Fed. R. Civ. P. 56(c).

3

Defendants Armstong and Lesatz "were properly made aware of the various violations and could have acted to correct the state of affairs, but did nothing towards rectifying the situation." (Dkt. No. 45, at 2.) Plaintiff is essentially attempting to raise a new claim against Defendants Armstrong and Lesatz in his objections that was not included in his complaint, and this is not the proper manner in which to present his claim to the Court. *Robinson v. Wade*, 686 F.2d 298, 304 (5th Cir. 1982). Even if the Court were to consider Plaintiff's allegations against Defendants Armstrong and Lesatz, Plaintiff's conclusory statement that Defendants Armstong and Lesatz knew of constitutional violations being perpetrated against Plaintiff and did nothing to stop them, in the absence of specific details to support this statement, is not sufficient to state a claim on which relief can be granted. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) ("The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims . . . ."); *see also Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) ("Supervisory liability under § 1983 cannot be based on a mere failure to act but must be based upon active unconstitutional behavior.").

Plaintiff next objects to the Magistrate Judge's determination that Plaintiff's claims that Defendants exhibited harassing, unprofessional, and rude behavior toward him do not rise to the level of Eighth Amendment violations. The Court agrees with the Magistrate Judge. Although Plaintiff's allegations concerning the unprofessional and rude behavior of the guards may relate to claims cognizable in a § 1983 proceeding, they themselves are

insufficient to warrant relief under § 1983. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (holding that "verbal abuse" and "harassment" are not sufficient to support an Eighth Amendment claim).

Plaintiff does not object to the Magistrate Judge's determinations that Defendants are entitled to dismissal of Plaintiff's Ninth Amendment claims and of Plaintiff's claims that Defendants violated his constitutional rights in the manner they handled his grievances, and the Court does not believe that these determinations are erroneous. Thus, the Court agrees with the Magistrate Judge that (1) Defendants Armstong and Lesatz are entitled to dismissal of all of Plaintiff's claims against them; (2) all Defendants are entitled to dismissal of Plaintiff's claims that Defendants exhibited harassing, unprofessional, and rude behavior toward him; (3) all Defendants are entitled to dismissal of Plaintiff's Ninth Amendment claims; and (4) all Defendants are entitled to dismissal of Plaintiff's claims that Defendants violated his constitutional rights in the manner they handled his grievances.

## II. Defendants' Objections

Defendants first object to the Magistrate Judge's determination that they are not entitled to qualified immunity on the four types of claims identified above for which dismissal is appropriate. Defendants are entitled to qualified immunity if either the facts that Plaintiff has alleged in his complaint fail to make out a violation of a constitutional right, or they do make out a violation of a constitutional right but that right has not been "clearly established" at the time of Defendants' alleged misconduct. *Pearson v. Callahan*, 129 S. Ct.

808, 815-16 (2009). As Defendants correctly point out, with respect to the four types of claims identified above for which dismissal is appropriate, Plaintiff has failed to allege facts that make out a violation of a constitutional right. Thus, (1) Defendants Armstrong and Lesatz are entitled to qualified immunity on all of Plaintiff's claims against them; (2) all Defendants are entitled to qualified immunity on Plaintiff's claims that Defendants exhibited harassing, unprofessional, and rude behavior toward him; (3) all Defendants are entitled to qualified immunity on Plaintiff's Ninth Amendment claims; and (4) all Defendants are entitled to qualified immunity on Plaintiff's claims that Defendants violated his constitutional rights in the manner they handled his grievances.

Defendants next object to the Magistrate's determinations that Plaintiff has pleaded sufficient facts relating to various Eighth Amendment claims to withstand Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim, and that Plaintiff has introduced sufficient evidence of these claims to withstand Defendants' Rule 56 motion for summary judgment.

*A. Mattress Restriction*

Plaintiff argues that Defendants violated his Eighth Amendment rights by removing his mattress from his cell and by refusing to provide him with an extra blanket to keep warm. Plaintiff's complaint states a claim for violation of his Eighth Amendment rights only if it alleges facts that, if true, constitute an "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Though Plaintiff disputes the charges contained in

6

the misconduct ticket,[2] Plaintiff concedes that the mattress restriction was imposed because Plaintiff received a major misconduct ticket for destroying his mattress. Because the mattress restriction came as a result of a major misconduct ticket, the Court cannot conclude that it constitutes an "unnecessary and wanton infliction of pain." In *Grissom v. Davis*, 55 F. App'x 756 (6th Cir. 2003) (unpublished), which involved a very similar factual situation, the Sixth Circuit determined without a hearing that the mattress restriction neither "deprived [the prisoner] of basic human needs or caused her to suffer serious harm." *Id.* at 757-58. The only meaningful difference between the facts in *Grissom* and the facts at hand is that the mattress restriction in *Grissom* lasted seven days while Plaintiff was placed on mattress restriction for thirty-nine days. Even despite the difference in time periods, however, Plaintiff's alleged injuries — general discomfort and back pain — are no more severe than the alleged injuries in *Grissom* — "aching body" and emotional injury. Like the plaintiff in *Grissom*, Plaintiff has failed to state a claim upon which relief can be granted.

*B. Feces Attack*

Plaintiff's allegations regarding the circumstances of inmate Berry's feces attack on Plaintiff can be read to implicate three possible Eighth Amendment claims: (1) a claim for failure to protect; (2) a claim for excessive use of force; and (3) a claim for deliberate indifference to serious medical needs.

---

[2] The misconduct ticket charges that Plaintiff removed threads from his mattress to create a "fish line," which constitutes a destruction of property valued at ten dollars or more. (Dkt. No. 28, Ex. G.) Plaintiff argues that the line did not come from the mattress, though Plaintiff does not dispute that his mattress was destroyed, that the fish line was found in his cell, or explain where the fish line came from.

7

To state an Eighth Amendment claim for failure to protect, Plaintiff must allege facts sufficient to support a finding that Plaintiff was subjected to a "substantial risk of serious harm," and that Defendants were "deliberately indifferent" to Plaintiff's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff has not pleaded facts sufficient to support a finding of a substantial risk of serious harm. First, although, as Plaintiff points out, contact between Plaintiff's skin and another inmate's fecal matter is properly considered "extremely gross," the circumstances alleged by Plaintiff do not suggest that Plaintiff was in danger of any "serious harm." According to Plaintiff's own allegations, the attack occurred while Plaintiff was in the shower, and immediately following the attack Plaintiff was taken to a different shower and able to cleanse himself there. Though the Court does not foreclose the possibility that a fecal attack could rise to the level of "serious harm" in appropriate circumstances, this is not that case. In addition, Plaintiff's allegations cannot support the conclusion that Plaintiff was in danger of any other serious physical harm at the expense of inmate Berry. The stalls in which inmate Berry and Plaintiff were showering when the incident occurred were apparently separated by a wall, and although inmate Berry may have been able to partially encroach into Plaintiff's stall both above and below the wall, he was not able to fully penetrate the wall or access Plaintiff. Thus, according to Plaintiff's allegations, Plaintiff was secure from a substantial risk of serious harm at the hands of inmate Berry by virtue of the separate stall arrangement.

To state an Eighth Amendment claim for excessive use of force, Plaintiff must allege facts sufficient to support a finding that the Defendants used force "maliciously and

sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). An Eighth Amendment violation occurs if the offending conduct reflects an "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). Plaintiff does not dispute the propriety of putting him in restraints while he showered. Rather, Plaintiff alleges: "[w]hen I tried to protect myself from inmate Berry . . . by pulling on the restraint straps that' [sic] when the escorting officer Bone pulled on the restraint strap with so much force that it caused my body to slam up against the shower stall with my head and shoulder hitting the right shower cage from where inmate Berry was at." (Dkt. No. 1, ¶ 20.) Plaintiff also states that, during inmate Berry's attack, Defendant Bone was pulling on his restraints in a manner that caused severe pain to Plaintiff's wrist. (*Id*.) These allegations do not reflect an unnecessary and wanton infliction of pain. Plaintiff's own account of the incident suggests that he was struggling and writhing in his shower stall to avoid inmate Berry, and it would have been nearly impossible for Defendant Bone to keep Plaintiff's restraints both comfortable and secure while the attack was underway. Any discomfort experienced by Plaintiff appears to have resulted from the chaos of the attack rather than an unnecessary and wanton infliction of pain by Defendant Bone.

Allegations that Defendants were deliberately indifferent to Plaintiff's "serious medical needs" can also be sufficient to support an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). When the alleged medical need is not a condition that has been previously diagnosed by a physician, the prisoner must demonstrate that the need "is so obvious that even a lay person would easily recognize the necessity for a doctor's

9

opinion." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-98 (6th Cir. 2004). Plaintiff claims that, after the Berry attack, he asked the escorting officer for a medical examination because he was in severe pain. (Dkt. No. 1, at pp. 14-15.) However, Plaintiff's mere complaints that he was in pain are not sufficient to satisfy the objective requirement that a lay person be able to recognize the necessity for a doctor's opinion. In addition, Plaintiff does not specify the nature of the pain he complained of, and the Court cannot infer from Plaintiff's description of the Berry attack that Plaintiff suffered any physical injury that would result in a "serious medical need." Thus, Plaintiff's complaint fails to state a claim that Defendants violated his Eighth Amendment rights by failing to provide him with medical attention following the Berry attack.

C. "Rat"

Plaintiff claims that Defendant Fielding violated his Eighth Amendment rights by calling him a "rat" within earshot of other prisoners, which caused the other prisoners to want to kill Plaintiff. To state a claim under the Eighth Amendment, Plaintiff must allege facts sufficient to support a finding that Defendant Fielding's conduct resulted in an "unnecessary and wanton infliction of pain." The mere threat of injury or pain may be sufficient to support a claim under the Eighth Amendment. *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) ("With respect to the objective prong, '[p]risoners have the right not to be subjected to the unreasonable threat of injury or death.'" (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 783-84 (9th Cir. 1985)). This is because "a remedy for unsafe conditions need not await a tragic event." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25 (1993)). Nevertheless, to constitute

a "wanton infliction of pain" the risk of harm must be "pervasive." *Williams v. Gersbacker*, 1993 U.S. App. LEXIS 27694, at *3 (6th Cir. Oct. 22, 1993) (citing *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)). Though there is no precise formula for determining whether a threat of harm is pervasive, the Court should consider whether the Defendant's actions that caused the harm were repeated or isolated incidents, and whether the Plaintiff attempted to help himself by apprising prison officials of the threat. *Id.* at *3-4. In this case, Defendant Fielding only referred to Plaintiff as a rat on one occasion, and Plaintiff does not suggest that he made anyone aware of the problem or otherwise expressed fear for his safety. (Dkt. No. 1, Pl.'s Compl. p. 6.) Based on the allegations contained in Plaintiff's complaint, the Court cannot conclude that Defendant Fielding's actions subjected Plaintiff to a pervasive risk of harm or constituted a "wanton infliction of pain."

*D. Meal Deprivation*

Plaintiff claims that Defendant Fielding violated his Eighth Amendment rights by withholding Plaintiff's lunch and morning food trays on April 6 and 7, 2007, his morning food tray on April 8, 2007, and by shutting off Plaintiff's water for a period of a few hours on April 6, 2007. Though the deprivation of life's necessities, such as food and water, can constitute a claim under the Eighth Amendment, *see Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001), the withholding of five meals during a three day period and a withholding of water for a brief period of time, though it may result in some discomfort to the prisoner, absent special circumstances, does not result in a health risk to the prisoner sufficient to qualify as a "wanton infliction of pain." *See Cunningham v. Jones*, 667 F.2d

11

565, 565-66 (6th Cir. 1982); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (unpublished). Even if the Court were to assume that Plaintiff's complaint did state a claim under the Eighth Amendment, the claim would nevertheless fail at the summary judgment stage. Defendants' evidence, undisputed by Plaintiff, shows that due to behavioral problems Plaintiff was on food restriction between April 6 and April 8, 2007. (Dkt. No. 28, Ex. D.) Though Plaintiff claims that Defendant Fielding withheld his food to get him to stop writing grievances, in light of the fact that Plaintiff was on food restriction, no reasonable jury could conclude that Plaintiff's deprivation of food was anything other than self-inflicted, and this is not sufficient to support an Eighth Amendment claim.[3] *See Freeman v. Berge*, 441 F.3d 543 (7th Cir. 2005).

Finally, Defendants object to the Magistrate's determination that there are issues of fact as to whether Defendants violated Plaintiff's constitutional rights by confiscating Plaintiff's Federal Emergency Management Agency ("FEMA") and American Society of Composers, Authors, and Publishers ("ASCAP") materials. To the extent Plaintiff claims that the confiscation of these materials violated his Fourteenth Amendment due process rights, Plaintiff's claim must fail at the summary judgment stage. Defendants present

---

[3]To the extent Plaintiff's complaint states a claim for First Amendment retaliation, that claim must also fail. A First Amendment retaliation claim requires the plaintiff to prove: 1) that he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements one and two. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff fails to prove the final element because the food deprivation — the alleged retaliation — came as a result of Plaintiff's status on food restriction, not as a result of any protected conduct.

12

evidence that they notified Plaintiff that he was in possession of contraband, and conducted a hearing as to whether the materials in Plaintiff's possession were contraband. (Dkt. No. 28, Exs. E, F.) Thus, Plaintiff was given an adequate opportunity to contest the confiscation, and in this case that is all the due process clause requires. *See Carlton v. Fassbender*, No. 93-1116, 1993 U.S. App. LEXIS 17654, at *5 (6th Cir. July 1, 1993) (unpublished) ("In this case, [the prisoner] received notice and an opportunity to challenge the deprivation of his materials; that is all the Constitution requires.").

To the extent Plaintiff claims that the confiscation of these materials violated his First Amendment rights, this claim must also fail at the summary judgment stage. Whether a prison regulation that infringes on First Amendment rights will be upheld depends on four factors: (1) there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) there must be alternative means of exercising the right that remain open to the prisoner; (3) the Court must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; (4) there must not be alternatives available that fully accommodate the prisoner's rights at de minimis costs to the valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

Plaintiff's materials were confiscated and withheld pursuant to prison regulation PD 05.01.118 D, which provides that "[m]ail should be prohibited if it is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner." (Dkt. No. 28, Ex. E.) The Sixth Circuit has

13

determined that "deterrence of crime, rehabilitation of prisoners, and institutional security" are "valid penological objectives," and the Court believes that PD 05.01.118 furthers these objectives and satisfies the remaining factors of the *Turner* analysis. *Phelps v. Dunn*, 965 F.2d 93, 98 (6th Cir. 1992).

After determining that the regulation itself is valid, the Court must also determine if the regulation is valid as applied. *See Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (ordering remand for a determination of whether regulations are valid as applied after determining that the regulations are valid on their face). According to the Notice of Intent to Conduct an Administrative Hearing issued to Plaintiff, Plaintiff's FEMA materials were withheld because they "contain information that could jepardize [sic] the safety and security of the institution." (Dkt. No. 28, Ex. E.) Specifically, the FEMA materials discussed engineering principles and practices, the emergency preparedness of the USA, radiological emergencies, and "building for the earthquakes of tomorrow." (*Id*.) The hearing officer concluded that "[t]hese books fit [within PD 05.01.118 D] because they would give [Plaintiff] knowledge of procedures that Correctional Facilities would use in the event of a disaster." (*Id*.) The hearing officer's conclusion is undoubtedly correct. Prison officers have a strong safety interest in keeping prisoners ignorant of the procedures that would be used to maintain order and security in the event of a disaster, and to allow Plaintiff access to FEMA materials would severely undermine that goal.

Likewise, the confiscated ASCAP materials fit squarely within the terms of the regulation. Plaintiff requested the ASCAP materials to apply for membership in the society.

14

(Dkt. No. 28, Ex. F.)  ASCAP membership would allow Plaintiff to receive royalties on lyrics and other musical works, and give him access to other tools that would enable him to run a business from prison. (*Id.*)  Prison should be a rehabilitative experience.  It is not intended to be a profit-making venture.  Plaintiff's requested ASCAP materials would have interfered with his rehabilitation, and they are thus properly prohibited by the regulation.

Upon review, each of Plaintiff's claims either fails to state a claim upon which relief can be granted or fails at the summary judgment stage.   Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's objections to the R&R (Dkt. No. 45) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' objections to the R&R (Dkt. No. 37) are **GRANTED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation of the Magistrate Judge (Dkt. No. 36)  is **APPROVED IN PART AND REJECTED IN PART**.  To the extent the R&R recommends that Plaintiff's claims against Defendants Armstrong and Lesatz be dismissed, that Plaintiff's Eighth Amendment claims for harassing and unprofessional language be dismissed, that Plaintiff's Ninth Amendment claims be dismissed, and that Plaintiff's claims relating to the manner in which Defendants handled his grievances be dismissed, the R&R is **APPROVED** and, combined with the discussion set forth herein, **ADOPTED** as the opinion of the Court.  To the extent the R&R recommends that Plaintiff's First Amendment claims, remaining Eighth Amendment claims, and Fourteenth Amendment claims be permitted to proceed, the R&R is **REJECTED** and replaced by the opinion set forth herein.

15

**IT IS FURTHER ORDERED** that Defendants' joint motion to dismiss, motion for summary judgment, and motion for qualified immunity (Dkt. No. 27) is **GRANTED**, and that this case is **DISMISSED** in its entirety.

A judgment consistent with this memorandum opinion and order will be entered.


Dated: March 24, 2010                                  /s/ Robert Holmes Bell
                                                       ROBERT HOLMES BELL
                                                       UNITED STATES DISTRICT JUDGE